IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| U.S. XPRESS ENTERPRISES, INC. and U.S. XPRESS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CAMERON RAMSDELL, <br><br> Defendant. | Case No. _____ |

## COMPLAINT

Plaintiffs U.S. Xpress Enterprises, Inc. and U.S. Xpress, Inc. (collectively, "U.S. Xpress") file this Complaint against Defendant Cameron Ramsdell, respectfully showing the Court as follows:

### PARTIES, JURISDICTION AND VENUE

1. U.S. Xpress Enterprises, Inc. is a Nevada Corporation with its principal place of business in Chattanooga, Tennessee. U.S. Xpress Enterprises, Inc. is therefore a citizen of the states of Tennessee and Nevada.

2. U.S. Xpress, Inc. is a Nevada Corporation with its principal place of business in Chattanooga, Tennessee. U.S. Xpress, Inc. is therefore a citizen of the states of Tennessee and Nevada. U.S. Xpress, Inc., is a wholly owned subsidiary of U.S. Express Enterprises, Inc.

3. Mr. Ramsdell is a Georgia citizen who may be served with process at his residence, 740 Amsterdam Avenue Northeast, Atlanta, GA 30306.

20927203v1

4. U.S. Xpress files this action under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as there is a complete diversity of citizenship between U.S. Xpress Enterprises, Inc., U.S. Xpress, Inc., and Mr. Ramsdell, and the amount in dispute, excluding interest, attorneys' fees and costs, exceeds $75,000.

6. Mr. Ramsdell is subject to personal jurisdiction in Tennessee pursuant to Tennessee's Long-Arm Statute, Tenn. Code Ann. § 20-2-225.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to U.S. Xpress's claim occurred in the Eastern District of Tennessee.

8. An actual case and controversy of a justiciable nature exists between U.S. Xpress and Mr. Ramsdell involving their rights and obligations under two agreements between the parties, both of which are governed by the laws of the State of Tennessee. U.S. Xpress believes that Mr. Ramsdell is currently violating the restrictive covenants in the Employment Agreement between Mr. Ramsdell and U.S. Xpress Enterprises, Inc. U.S. Xpress is therefore uncertain as to its obligations to make continuing payments to Mr. Ramsdell pursuant to the Severance Agreement between the parties, whether U.S. Xpress is entitled to claw back monetary payments made to Mr. Ramsdell under the Severance Agreement, and whether U.S. Xpress is entitled to specific performance, injunctive relief, and other remedies to enforce the restrictive covenants in the Employment Agreement. U.S. Xpress is, therefore, entitled to bring this declaratory judgment action in this Court to determine its rights on a going-forward basis.

## STATEMENT OF FACTS

9. U.S. Xpress is one of the nation's largest asset-based truckload carriers and digital transportation solutions providers, offering services throughout the U.S. and across North America.

10. The transportation solutions industry is extremely competitive, and there are a limited number of executive positions at companies within the industry. U.S. Xpress has endeavored to develop and maintain strong relationships with its industry partners and the clients from whom it solicits business.

11. Mr. Ramsdell served as the President of Variant, a business division of U.S. Xpress, Inc., for over two years, beginning in April 2019. As the President, Mr. Ramsdell was responsible for a groundbreaking, proprietary platform built to overhaul the long-haul trucking industry and maximize fleet performance by incorporating multi-model data access, distributed high performance computing, and multi-tiered architectures.

12. On or about April 8, 2019, Mr. Ramsdell executed an Employment and Noncompetition Agreement (the "Employment Agreement") with U.S. Xpress, a true and correct copy of which is attached hereto as **Exhibit A**.

13. The non-compete provision in the Employment Agreement states as follow:

(a) <u>Covenant Not to Compete</u>. The parties acknowledge that Employee is being hired to develop in a start-up environment a new digital model for the truckload industry and, that in the role for which he is hired, Employee will be in a unique position to have access to Company's core strategies and intellectual property. ***During the Noncompete Term, as defined below, the Employee shall not, without prior written approval of the Company, assist any entity to develop a similar digital truckload model or deploy for the benefit of any other business providing freight transportation services by use of dry van trailer, either directly or indirectly via brokerage, logistics, or other indirect arrangement, the concepts that Employee was hired to develop***. The parties have identified certain

> businesses, set forth in Exhibit A hereto, which together with any parent, subsidiary or affiliated company of those businesses are designated as defined competitors (the "Defined Competitors"). During the Noncompete Term, as defined below, the Employee shall not, without prior written approval of the Company, directly or indirectly, own, manage, operate, finance, control, invest, engage, or participate in the ownership, management, operation, financing, or control of any Defined Competitor; nor shall the Employee be employed by, associated with, or in any manner connected with, lend his name or any similar name to, lend his credit to, render services of any nature for, or provide advice or consultation to such Defined Competitor.

Employment Agreement § 4.1(a) (emphasis added).

14. The Employment Agreement states that Section 4.1(a) shall apply to Mr. Ramsdell until the second anniversary of either his "termination pursuant to Section 3.1(b), (c), or (d)" or his "termination at the election of [Mr. Ramsdell]" (the "Noncompete Term"). *Id.* § 4.2.

15. The Noncompete Term "shall be extended by the length of any period during which [Mr. Ramsdell] is in breach of the terms of Section 4.1." *Id.*

16. As a result of his job responsibilities at U.S. Xpress, Mr. Ramsdell played an instrumental role in overseeing the design, development, and implementation of U.S. Xpress's "Confidential Information" concerning digital transportation solutions.

17. Confidential Information is defined in the Employment Agreement as:

> all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, trade secrets, computer programs, computer software, applications, operating systems, software design, web design, databases, manuals, records, articles, systems, vendor information, financial information, results, accounting information, accounting records, legal information, marketing information, advertising information, pricing information, credit information, design information, payroll information, staffing information, personnel information, employee lists, supplier

20927203V1

lists, vendor lists, developments, reports, internal controls, security procedures, graphics, drawings, sketches, market studies, sales information, revenue, costs, formulae, notes, communications, algorithms, product plans, designs, styles, models, ideas, specifications, customer information, and customer lists of the Company or its businesses or any existing or prospective customer, supplier, investor or other associated third party, or of any other person or entity that has entrusted information to the Company in confidence.

Employment Agreement § 5.2.

18. Indeed, it was necessary for Mr. Ramsdell to oversee the creation and use of such Confidential Information on a day-to-day basis for Mr. Ramsdell to effectively perform his duties for U.S. Xpress.

19. Having generated its Confidential Information at great expense, and through the time and industry of its individual employees, U.S. Xpress has a legitimate business interest in its Confidential Information, and U.S. Xpress likewise has a legitimate business interest in its relationships with existing and prospective clients and industry partners, as well as the client and industry goodwill developed over time by U.S. Xpress through its employees.

20. U.S. Xpress takes steps to ensure protection of its confidential business information, including requiring employees to enter into employment agreements containing confidentiality and, in some cases, non-competition provisions.

21. Mr. Ramsdell further agreed as follows:

> <u>Specific Performance</u>. The Restrictive Covenants are necessary for the protection of the business and goodwill of the Company and are considered by the Employee to be reasonable to accomplish such purpose. The Employee agrees and acknowledges that any breach of the Restrictive Covenants would cause the Company immediate, substantial and irreparable damage for which monetary damages will not be an adequate remedy. In the event of any such breach, in addition to such other remedies which may be available in law, the Company shall have the right to seek specific performance, injunction, or any other equitable relief in any court having jurisdiction over such claim without the necessity of showing any actual damage or posting any bond or furnishing any other security,

and that the specific enforcement of the provisions of this Agreement will not diminish Employee's ability to earn a livelihood or create or impose on Employee any undue hardship. If the Company prevails in a proceeding to remedy a breach under the Restrictive Covenants, the Company shall be entitled to receive its reasonable attorneys' fees, expert witness fees, and out-of-pocket costs incurred in connection with such proceeding, in addition to any other relief they may be granted.

Employment Agreement § 4.5.

22. Effective December 13, 2021, Mr. Ramsdell's employment terminated with Variant and U.S. Xpress.

23. The Employment Agreement addresses the effect of termination as follows:

> . . . ***subject to the Employee's compliance with Articles IV and V of this Agreement*** and his execution of a release of claims in favor of the Company, the Company shall continue to pay the Employee the Base Salary he was earning at the time of termination through the first anniversary of the termination date. Additionally, Company shall pay the Employee's COBRA payments for family benefits through the first anniversary of the termination date, or Employee's acceptance of new employment that provides for health insurance.

Employment Agreement § 3.2(c) (emphasis added).

24. On or about December 13, 2021, Mr. Ramsdell executed a Confidential Release and Severance Agreement (the "Severance Agreement") with U.S. Xpress, Inc. The Severance Agreement provided for the payment of compensation to Mr. Ramsdell. All of the payments required under the Severance Agreement, however, were explicitly conditioned on Mr. Ramsdell's adherence to the terms of the Employment Agreement, including, without limitation, the noncompetition provisions and other restrictive covenants in the Employment Agreement.

25. Pursuant to the Severance Agreement, U.S. Xpress agreed to pay Mr. Ramsdell a 2021 bonus on or before December 31, 2021.

20927203V1

26. Pursuant to the Severance Agreement, U.S. Xpress agreed to continue to pay Mr. Ramsdell his base salary for a period of 12 months, in accordance with and subject to the terms of the Employment Agreement.

27. On or about January 5, 2022, the Executive Vice President and Chief Legal Officer of U.S. Xpress, Nathan Harwell, sent Mr. Ramsdell a letter reminding him of his obligations under the Employment Agreement, including the restrictions on competing with U.S. Xpress or soliciting U.S. Xpress clients and prospective clients during the Noncompete Term. A true and correct copy of the letter is attached hereto as **Exhibit B**.

28. On or before March 7, 2022, Mr. Ramsdell began working for a competitor of U.S. Xpress, EmergeTech, LLC ("Emerge"), in the position of "Chief Operating Officer." Upon information and belief, Mr. Ramsdell was hired in that role based on his experience in using technology to enhance fleet performance, a background and experience developed during his tenure as the President of Variant. A true and correct copy of the Emerge press release announcing Mr. Ramsdell's hiring as Emerge's Chief Operating Officer is attached hereto as **Exhibit C**.

29. Any background or expertise Mr. Ramsdell will bring to Emerge will necessarily be based upon Variant and U.S. Xpress's Confidential Information, core strategies, and intellectual property.

30. After commencing employment with Emerge, upon information and belief, Mr. Ramsdell is in breach of the Employment Agreement, including but not limited to the Restrictive Covenants in Section 4.1 of the Employment Agreement. Moreover, U.S. Xpress fears that, through Mr. Ramsdell's employment at Emerge, he has already or will inevitably misuse U.S.

Xpress's Confidential Information, in violation of the covenants set out in Article V of the Employment Agreement.

31. U.S. Xpress seeks a determination as to whether Mr. Ramsdell is in breach of the Restrictive Covenants in the Employment Agreement.

## COUNT I

## DECLARATORY JUDGMENT

32. U.S. Xpress incorporates and restates the paragraphs 1 through 30 as if set forth fully herein.

33. Mr. Ramsdell and U.S. Xpress entered into two valid contracts – the Employment Agreement and the Severance Agreement.

34. U.S. Xpress fully performed its obligations in accordance with the terms of both agreements.

35. U.S. Xpress fears and reasonably believes that Mr. Ramsdell has materially breached the Restrictive Covenants of the Employment Agreement by commencing employment with Emerge, causing immediate and irreparable harm to U.S. Xpress.

36. Any such breach occurred less than two years after Mr. Ramsdell's termination of his employment with US. Xpress.

37. Mr. Ramsdell acknowledged in the Employment Agreement that U.S. Xpress would be irreparably harmed by any breach of the Restrictive Covenants in the Employment Agreement and that U.S. Xpress would be entitled to injunctive relief to prevent or end such a breach.

20927203V1

38. Mr. Ramsdell's breach has caused and is continuing to cause immediate and irreparable harm to U.S. Xpress.

39. U.S. Xpress is uncertain as to its obligations to make continuing payments to Mr. Ramsdell pursuant to the Severance Agreement, whether U.S. Xpress is entitled to claw back monetary payments made to Mr. Ramsdell under the Severance Agreement, and whether U.S. Xpress is entitled to specific performance, injunctive relief, and other remedies to enforce the restrictive covenants in the Employment Agreement. U.S. Xpress is, therefore, entitled to bring this declaratory judgment action in this Court to determine its rights on a going-forward basis. In the event the Court does determine that Mr. Ramsdell is in breach of the Employment Agreement, the Court should award U.S. Xpress compensatory relief, in the form of relieving U.S. Xpress of making any further payments and requiring Mr. Ramsdell to reimburse U.S. Xpress for the payments made under the Severance Agreement; and the Court should further grant U.S. Xpress specific performance, injunctive relief, and other appropriate remedies to enforce the restrictive covenants in the Employment Agreement.

## PRAYER FOR RELIEF

WHEREFORE, U.S. Xpress requests that this Court grant the following relief:

(a) That judgment be entered in favor of U.S. Xpress and against Mr. Ramsdell declaring that Mr. Ramsdell is in violation of the Employment Agreement and further declaring that U.S. Xpress has no further obligation to make any base salary payment to Mr. Ramsdell under Section 3.2(c) of the Employment Agreement;

20927203V1

(b) That the Court order Mr. Ramsdell to repay U.S. Xpress for the 2021 bonus Mr. Ramsdell received as well as any base salary payments received since his termination effective December 13, 2021;

(c) That the Court grant U.S. Xpress preliminary and permanent injunctive relief enjoining Mr. Ramsdell from any breach of the Restrictive Covenants of the Employment Agreement for a period of two years from the end of the term of his employment;

(d) That U.S. Xpress be awarded its attorneys' fees, expenses of litigation, and costs, in accordance with Section 4.5 of the Employment Agreement; and

(e) That the Court award U.S. Xpress such other and further relief as the Court deems just and proper.

20927203V1

Respectfully submitted this 14th day of March, 2022.

/s/ Charles B. Lee
Charles B. Lee
Tennessee Bar No. 011570
Russ Swafford
Tennessee Bar No. 034803
MILLER & MARTIN PLLC
Volunteer Building Suite 1200
832 Georgia Avenue
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
Fax: (423) 785-8480
chuck.lee@millermartin.com
russ.swafford@millermartin.com

James F. Bogan III
Georgia Bar No. 065220 (To be admitted *Pro hac vice*)
Stephanie Bedard
Georgia Bar No. 852614 (To be admitted *Pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
jbogan@kilpatricktownsend.com
sbedard@kilpatricktownsend.com

*Attorneys for U.S. Xpress, Inc.*

20927203V1